Novartis Pharmaceutical Corporation. Mr. Dinger. Thank you, Your Honor. The issue in this case is whether Teva faced a reasonable apprehension of suit. That question is governed in this context by the principles of the Vanguard and Goodyear cases, cases that plainly survived both the 2003 amendments to the Hatch-Waxman Act and this Court's decision in Teva v. Pfizer, because Vanguard recited in both. In those cases, as here, the patentee brought an intellectual property suit against Teva to forestall Teva's competing technology. By doing so, Novartis showed a willingness to protect its technology. That's a quote from the Vanguard case. The patentee, in other words, was not the quiescent patent owner that this Court articulated the reasonable apprehension test to protect. Well, I have this problem, which would be helpful to me if you could shed some light on it. You had been previously sued for infringement of the 937 patent, hadn't you? That's correct. Why would you have a reasonable apprehension that you would be imminently sued for infringement of the other four? Because as far as I can see, if your Novartis prevailed in the 937 patent, that probably, I think, would prevent you from putting your product on the market, the generic drug, until the patent had expired. And it seems to me they would be unlikely to sue you under the other four patents unless and until the validity of the issues in the 937 patent had been determined. That's why it seems to me, in this case, the fact that you had been already sued for infringement of one of the patents suggests, to me at least, that it's unlikely and unreasonable to believe that you'd be sued imminently, which is what we said is the requirement for any one of the other four. And that's what's bothering me about your argument. Well, then let me address the imminence requirement. I think we can all agree that there's an apprehension that we're going to be sued sooner or later. The imminence requirement, I guess there are a couple of things that I should say about that. First of all, when the Supreme Court and this Court used the term imminence in analyzing whether there's an actual controversy under the Declaratory Judgment Act, the term really stands as the opposite of abstract and hypothetical. In Aetna, in Maryland Casual, and in this Court's decisions on Article III, there is a contrast in the Declaratory Judgment Act between controversies that are abstract and hypothetical, things that may never be asserted, and things that are definite and concrete. And the word imminent in that context is used, I suggest, as a synonym for the concreteness that this Court requires. In the Vanguard and Goodyear cases, the Court inferred from the fact that the patentee had brought litigation to restrain the competing technology, even though they had patents which they had not asserted. Indeed, they had not asserted any patent claims in those cases. They were both trade secret claims. Nonetheless, the Court concluded that where the patentee has initiated hostilities, has indicated a willingness to protect its own technology, then asserting claims under any available patents is, as this Court said in Vanguard, just another logical step in the patentee's quest to protect its technology. And that is enough to establish the immediacy, the concreteness requirement that Article III in the Declaratory Judgment Act requires. Suppose they had put out a statement that we've sued Teva for infringement of the 939 patent, and we wish to announce that we're going to sue them for infringement probably of the other four, but not for two years. Would that be enough to show it's imminent? I would say yes, Your Honor, because there's an actual controversy. It is concrete. There is a fully accrued cause of action for patent infringement. So you don't interpret imminent as meaning soon to happen? No, because there was no such finding in Vanguard or in Goodyear that the patentee was on the verge of filing a patent infringement. What I'm concerned about is the statement in FISA that in order for this case to be one fit for judicial review, Teva must be able to demonstrate that it has a reasonable apprehension of imminent suit, and the word imminent is emphasized. But you must understand the circumstances in Teva were quite different. Not only was there no prior litigation, there was no pending litigation in Teva, but there were at least two other circumstances which made the prospect of joining issue on the patent that Teva sought to challenge abstract, hypothetical, conditional, something that isn't going to occur. The first was that Teva did not challenge every patent that was listed in the orange book in the Teva v. FISA situation. In other words, Teva told the FDA, we want to launch a generic version of Zoloft, but we don't propose to do so for another four years. That's not the case here. Teva has challenged every single patent listed in the orange book. Teva is saying, we want to launch our generic version of Fanveer right now, and the only thing that's stopping us are these patents. Second, in Teva v. FISA, Teva was not the first filer under the Hatch-Waxman Act. Teva was in line to the first filer who, under the statute, had a 180-day period of exclusivity once they launched. Again, according to Novartis here, Teva is the first filer here. The only thing that is stopping Teva from launching are these patents and the 30-month stay that Novartis has obtained by filing suit. This controversy is far more immediate, far more concrete, far less abstract than the claim in Teva v. FISA. And for that reason, I suggest that our claim, the suit that we apprehend, is as imminent as it was in Vanguard and Goodyear, and certainly satisfies the requirement of Article III. Mr. Theron, with respect to that, is imminent suit the proper basis for a declaratory judgment? We have a two-pronged test, which has been developed over the years. With respect to the two-pronged test, what if the imminent suit was changed to imminent injury? Would that make a difference? It would, Your Honor. We are facing an injury. How would you be injured? Because we lack the patent certainty that Congress intended for us to obtain, and that's why they created the cause of action to obtain patent certainty when it amended the Hatch-Waxman Act in 2003. We face liability. We face the same injury that any declaratory judgment plaintiff faces. We face liability. You face liability under the present action, under the 937 and 939 patents. Novartis has a cause of action against Teva on the other four patents. That cause of action accrued as soon as Teva filed its ANDA with a Paragraph IV certification on all five patents. Now, the district court made a mistake, and I should identify this. The district court seemed to think that by failing to bring suit on the other four patents within 45 days, that somehow Novartis lost the right to sue. That isn't the case, Your Honor. There is no 45- No, I don't think the court says they lost the right to sue. What it said was that since they had five patents in the Orange Book and they elected to sue on only one, that would suggest they weren't going to sue on the other four, at least not for a while. Maybe they'll sue on the other four after the questions under the 937 patent will be determined. Well, Your Honor, again, I go back to the Vanguard and Goodyear cases, which analyzed the question of reasonable apprehension, not in terms of whether or not the declaratory judgment plaintiff could reasonably anticipate that they'd get a complaint for patent infringement within hours or days or weeks or any particular time frame. Once the battle had been joined by the patentee filing suit on whatever theory, as long as it was directed to what the declaratory judgment plaintiff wanted to do, then the test as to reasonable apprehension was whether or not it was reasonable to think that the patentee would bring suit on the patents at some time. That was the phrase used in Goodyear, at some time. When the court decided, and the court relied on Vanguard, sorry, the court relied on Goodyear in Vanguard and said not that a patent infringement claim was imminent, but that a patent infringement claim in the context of a patentee shown willing to enforce, to protect its technology was just another logical step in its quest to protect its technology. I'm into my rebuttal, and although I'm happy to answer questions, I'd like to save the rest of my time. Okay, bye. Mr. Barrett? May it please the Court? Tebas says that it has reasonable apprehension of being suited to the DJ patents, and I think we should attest that statement, Your Honors. I think we should look at the conduct that the defendant, that Novartis has done, and let's see what that conduct does in terms of the objective reasonableness of Tebas' fear here. It is an objective conduct that we look at. We don't look at what's in Tebas' head. We look at the totality of the circumstances, and we look to make, to see. Mr. Barrett, you have five patents, which are listed in the Orange Book, covering the drug, the molecule. You sue on one, which is the earliest to expire. The others are not brought into the action. There is an infringement, a technical infringement, by the filing of the ANDA-IV certification. Why isn't there a reasonable apprehension on the part of Tebas to sue? Aren't they subject to a seriatim type of an approach at that point? You can sue at any time. First of all, you don't waive your rights to sue just because you didn't bring the action at this point in time. So why wouldn't it be proper for the COVA to come in and say, We are going to be sued. We are injured. Let's try it all at the same time. Well, that gets right to the point of the issue here, Your Honor. Just one correction. The four D.J. patents do not cover the molecule. They simply cover new methods of use. There is a distinction there. And it does change the answer a little bit. But the bottom line is that the conduct that defendant has done has not led to any apprehension. What have we done? What did we do in the 45 days? We sued on one patent. But what did we do with the D.J. patents? The only conduct that we did was not to sue. I think Judge Freeman had his hand on this one, that there is something to the 45 days. There is a reason why there is a 45 days in the statute. And when a party like Novartis elects not to sue in that 45 days, if we look at this realistically, which I think we have to do, it is easy to say they can sue during the 45 days, they can just as easily sue us after the 45 days, there is no bar keeping them from suing us at any time. The reality is if you are not sued in the first 45 days on a set of patents, the chances are far less that you are going to be sued later. So are you saying that your client will not sue? I am not saying that. I am not saying that. I have not said that to papers. I know you didn't, but I just want to be sure. And I don't think that is necessary to say that. I think what is necessary is what the conduct we have done. And the conduct we have done is in the 45 days we did not sue on those patents. Now, are we gaining something by not suing in the 45 days on those four patents with the idea that maybe we are going to hold them back and bring them in a seriatim fashion later on? I am not sure what we are gaining here. We are, in fact, losing something. And TEVA has lost sight of the fact that we are losing something here by not bringing the patents in the 45-day time period, which is the norm. What are you losing? We are losing this. If we were to bring suit on all five patents, we would get a one 30-month stay. And then if TEVA were able to prevail on one of those patents, a summary judgment, let's say the 937 patent that they claim they will prevail on now, we would still have four other patents in the suit brought in 45 days and we would still have our 30-month stay. And our 30-month stay would continue. But by only suing on the one patent, we now have increased our risk that if TEVA gets a summary judgment or ruling on that patent, then we lose the 30-month stay, even if we sued on the later patents. As far as that patent is concerned, or is it on all four other patents? Say it again. I missed the beginning. I'm sorry. Only on that 937 patent would the 30-month extension prevail, wouldn't it not? What about the other patents? Would the 30 months attached to that in the suit? My hypothetical is assuming there were no suit on the other patents. We had only sued on the one patent. Let's test that one for a moment. You've only sued on the 937 patent, so you get a 30-month stay at that point within the 45 days. The remaining four patents, let's say you sue one at a time, do you get an additional 30 months for each one of those patents? No, Your Honor. Of course not. There's only one 30-month stay. There's only one 30-month stay. So with respect to the other four, what is the actual detriment to Novartis in not bringing those four at the same time? Because if Teva does prevail on the 937 patent, and we didn't bring those four at the same time, then we would lose our 30-month stay at the moment the district court signed the decision prevailing on the 937 patent, be it by summary judgment one year from now, a year and a half before the 30 months is up. The 30 months would end. But at that point, then, you could sue on the other patents. If Teva prevails, can we sue on the other patents? I'm not sure. I'm not sure about this. This has never been tested. But I'm not sure. I think there's some substantial risk that once Teva has beaten us on the 937 patent, that there may be an issue of claim preclusion here. That it's a little too late, a little too little and a little too late, to bring other patents against Teva. Now, I know that's one of their complaints in their brief, that that's what they do. Well, that's what they're complaining about. But I think the first moment we did that, we'd hear claim preclusion, Your Honor. Why? Because these aren't continuing acts of infringement, as in the normal patent case. This is a very technical single act of infringement, one act. And we really better have brought all of our ducks in one basket or our eggs in one basket. But you just said you are retaining your right to sue. And in light of what you just said, why would you be retaining your right? What are you telling us? I am not saying I'm retaining a right to sue. You're going to sue anyway? I have made an election not to sue on these patents. That's all I've made. I am not retaining a right to sue. I am not making a decision as to what I don't need to make, and I don't need to articulate a decision. Let me ask you a follow-up question on something Judge Mayer asked you a few moments ago. Are you saying that you will not sue on the other four patents until the litigation presently pending involving the 937 patent has been determined? I'm not saying that, Your Honor. You're not saying that? I'm not saying that at all. In fact, what I am saying is if that litigation is determined against me, I may have a hard time suing on those other four patents. Okay. I just want to be sure that you're not saying that you will not sue on the other four patents until the issue is under this fifth patent. I am not saying that. I'm asking you to look at my conduct. I just want to understand your position. And I am not saying anything about what happens when Teva gets on the market. That is a different animal. That's a different act of infringement. And with patents that may have off-label use issues, that may be something that only comes into play at the time they come on the market. But right now we're talking about the… You're not saying you won't sue, but you're not saying… I mean, you might, right? I'm keeping my options open as I think I have a right to do. Tomorrow you could sue, you're saying. I think it's highly unlikely. Since I didn't sue in the first 45 days, I think it becomes less likely that I would gain anything by suing tomorrow. And it's that view in Teva's head of what I've done, which is the only thing that you can look at under the totality to see if there's reasonable apprehension here. And I have done nothing. We have done nothing except put the patent out there in the orange book to lead Teva to believe that we're going to sue them on it. About how long ago did you file a suit on the 937 patent approximately? About a year and a half ago. About a year and a half. And as I understand it, since then you've done nothing looking toward enforcement of the other four. Is that right? Not a thing, Your Honor. They're just sitting being listed in the orange book. They are sitting there being listed in the orange book still. We have not taken a position on them. We have not stated any position on them to the trade or to Teva. We have made no statements with respect to what we're going to do with these patents. The only thing that Teva can point to is the original suit on the 937 patent that they say makes this different than the Teva v. Pfizer case. They say this makes this case more apprehension. It's amazing how reasonable minds can differ. I think clearly there is less apprehension in this case than there was in the Teva v. Pfizer case. I think that for two plain reasons. One is that in the Teva v. Pfizer case, the D.J. patent had been sued on. While it wasn't against Teva, Pfizer had asserted that against IVAX and had held that patent out there and said, we're going to assert this patent. That's never happened here with these D.J. patents. Second in that case, as one of Your Honors have referred to,  There was an element of injury to Teva. In fact, that injury, while it might not be susceptible or caused by the defendant's conduct, there was some apparent possible injury because they would not have a chance to get into this 180-day fray. That injury doesn't exist in this case. Teva is in the fray. The only injury that I could find in their brief, and I'm pleased that Mr. Dinger reaffirmed it today, is they have a lack of certainty. That is their injury. And I don't know where in the law they're entitled to total certainty. Certainly the Hatch-Waxman Act says, let's increase certainty here. Let's get suits going, and that's what we've done. We've done suit on what Teva has to understand would be the most important patent here, which would be the 937 patent, the product patent, the method of use covering, the basic labeled uses. They have to know that that's what this case is really all about. So you said earlier that you're concerned that perhaps you would be precluded, have issued a preclusion as to the other patents if they were to prevail in this one. So is that a suggestion then that the other four, what do you have, quadruple patenting here except for the expiration? No, I'm not saying that they cover the same thing. I'm saying that some judge might find plain preclusion here because the operative set of facts, which is the filing of this and a specific single act of infringement, would create the same cause of action. And therefore, even though the patents are different, I should have brought all of those patents in my original suit. I'm not saying that's what the law is because it's very murky, and there's certainly been nothing on point like that. But I'm saying that there's a risk that some court would find. I particularly find some logical merit to that, that there has to be a point in time when you better fish or cut bait, and you just don't have forever to brandish these things over people's heads. Not that that's what we're doing, but that's clearly the implication, that we're brandishing them, and as soon as we lose on the first patent, we're going to drop these on Tebber. That's our plan. That would be purely a question of law to decide something like that, wouldn't it? Couldn't we say that in this case? What would be a question of law? Couldn't we say that there's no apprehension because you're not going to be allowed a suit? No apprehension after, you could say that in this case. No. You mean throughout any point in time? I'm only saying that occurs when they prevail on the 937 patent. I think that's the point in time by which we better have fish or cut bait. But until that time, I think there can be reasonable apprehension if the facts are correct. I think if you look at the facts here, and you look at all the conduct that Novartis has done, it cannot create reasonable apprehension. There's just been no movement in that direction. But, Mr. Barrett, you just said something that is somewhat bothersome, because if they prevail on the 937 patent, at that point you would be able to sue on the other four. Am I correct? No, I'm saying that there would be a substantial risk if some court would say, no, I cannot sue on the other four once they prevail on the 937 patent, that I've gone and I've waited too long. For issue preclusion. Pardon me? For issue preclusion. From claim preclusion. Issue preclusion, yes, sir. You just answered Judge Mayer by saying that we couldn't say that issue preclusion could be raised or would preclude you from filing an action on the other four patents. Is that correct? If I understand your answer? It's a legal opinion. I believe it's murky. I believe that there's certainly room for argument that claim preclusion would apply here, depending on what the operative set of facts were and how a court looked at the single act of infringement. I suppose some court could conceivably say, under Hatch-Waxman, you have to sue on all the patents listed in the orange book, and if you sue on less than all of them, you're precluded from subsequently suing on the rest. I mean, this is a possible interpretation, I suppose, of the Hatch-Waxman scheme. We have no idea what's going to happen either in the 937 litigation or how the 937 litigation is going to be resolved or what the consequences of that will be on any further litigation involving the other patents. It's all up in the air now, isn't it? Well, I think the scenario that you just spelled out, that it would be a claim preclusion if you don't always bring all patents at the same time in Hatch-Waxman in the very first moment, I think that may be pushing it a little too far. I think there has to be a point. In fact, there is one case... Just in view, we don't have any idea what's likely to happen in the future in this case involving these patents. Well, I think we do. I think defendant's conduct, if anything, defendant's conduct shows that what's going to happen in the future is there has not been an apprehension of suit at a level high enough to create a likelihood of suit. Whatever that level of apprehension would be that would... I see I'm in red, Your Honor. I apologize. One further question, Mr. Furd. Yes, sir. Would the 180-day exclusivity attach because they've already filed the initial certification under Section 4? Absolutely. TEVA has the 180-day exclusivity. On all four other patents also. Is that correct? They have the 180-day exclusivity on the 937 patent. Only because you sued. Because we sued. Within the 45 days. Right. Now, if someone else tries to get exclusivity on the other patents, they can't do that because TEVA has already certified to them. So TEVA would have been the first to certify. So even if I sue somebody else on those patents, TEVA still retains the 180 days. Is that your understanding of the Hatch-Waxman section? That's my understanding. As long as they file first, even though you did not sue them? As long as they file the Paragraph 4 certification first, even though we don't sue them, yes. But they would get the 180 days on all of the patents, and that wouldn't be a split or a shared exclusivity. So if somebody else filed a Paragraph 4 certification and you sued them under one of the patents, they would not be the first filer? No, I think they would not be the first filer. They were not the first Paragraph 4 filer on that patent. Thank you. Mr. Barrett's concern, prediction, speculation, that there may be a preclusion that would prevent him from asserting the other four patents down the road is something that was not mentioned in his brief. And at the outset, let me suggest that if you're thinking about making any decision based on that,  before you make that decision. Go on the basis of that. Because Mr. Barrett said something very interesting. He distinguished, and I'll use the statutory section. To make a ruling on that, whether he or some other time would be consistent with the Act, right? You have to distinguish between infringement claims under 35271E, which is the artificial act of infringement that Congress created in order to allow parties to obtain patent certainty before actually launching a generic product. And the later infringement claim under 271A, if and when the generic company gets FDA approval and actually starts selling the generic product. I certainly did not hear Mr. Barrett suggest that his failure to bring a lawsuit under 271E on the other four patents would ever preclude him from bringing a lawsuit when TEVA launches its product under 271A. And as a result, what's going to happen, I certainly accept Mr. Barrett's suggestion that we be realistic about what's going to happen. So let me tell you what's going to happen. Let us assume that TEVA is successful on the 937 patent and on appeal this Court affirms. The FDA will then approve TEVA's generic drug because there is no stay under the other four patents. But the other four patents exist. There's no finding that those patents are invalid. There's no finding that TEVA's drug doesn't infringe those patents. That's what we're trying to get a resolution about now. The whole point of the Hatch-Waxman Act and the whole point of the amendment in 2003 was to engineer a procedure whereby both sides could get a binding determination before the generic company is put to the hard choice whether to launch at risk to get a resolution of the patent issues. So Congress created a cause of action, a justiciable cause of action, that will allow that to be resolved. Why don't you finish your statement? You were going to tell us what's going to happen. What's going to happen is that TEVA is still put to the hard choice. TEVA has the legal right. So you win and you win on appeal here. Then what? What happens? Then we're put to the hard choice. We're put to the choice whether or not to launch the product at risk, not of the 937 because we've gotten a resolution of that, but of the other four patents. I cannot believe that Mr. Barrett will say at that point, if TEVA announces it's going to launch tomorrow, that Mr. Barrett will refrain for a second coming into court, bringing an action under 271A, saying TEVA is about to infringe these four patents and we want an injunction against their doing it and we want to litigate for another several years whether or not TEVA's proposed generic product infringes those four patents. The whole point was to forestall that exercise. That's why Congress created this cause of action in the first place. That's why in 2003, Congress said, and both parties can obtain patent certainty. That's the realism. That's the problem. The game that Novartis is playing here is that they want TEVA to be in the situation I described. They want TEVA to get FDA approval, if it's successful on the 937 patent, and still be put to the hard choice whether to launch at risk or to try and get a declaratory judgment action there or to defend the inevitable infringement action at that point. Whether you have to make a hard choice, how hard the choice is going to be in that situation may well depend on what the court does in deciding in your favor on the 937 patent. If the court in that decision broadly invalidates the 937 patent, that might be a decision that's broad enough to also clearly, in the opinion of any lawyer, invalidate the other four. We don't know. It may be the case, Your Honor, but even if we prevail on non-infringement grounds in the 937 action, or if the litigation gets dragged out to the point where the patent expires, we still have these other four patents that haven't expired, that won't expire for years after the 937. The 937 patent covers the molecule itself. It does. The other four patents cover a process. Methods of using those for the treatment of various diseases. That's correct. So it's not the same type of a situation. You'd be confronted with the possibility that you could prevail on 937 but still be blocked by the other four. If we invalidate the 937 patent, no, I'm not sure that that's right. It may be an old molecule, but the method of using it might be patentable. I haven't thought about that. But I don't think it's so clear that they don't have a patent claim even if their molecule is unpatentable for some reason. Thank you. Thank you. Case is submitted.